UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| LACEY SIVAK,<br><br>        Plaintiff,<br><br>   v.<br><br>GOVERNMENT OF IDAHO,<br><br>        Defendant. | Case No. 1:25-cv-00042-BLW<br><br>**INITIAL REVIEW ORDER BY SCREENING JUDGE** |

Plaintiff Lacey Sivak ("Plaintiff") has filed a Petition for a Federal Question, a Request to Proceed without Cost, and a "Notice to Disqualify Byron [sic] Lynn Winmill for Bias." (Dkts. 1, 4, 3.) The Clerk of Court conditionally filed the Petition (which is, in content, a civil rights complaint) because of Plaintiff's status as an Idaho Department of Correction inmate, his request to proceed in forma pauperis, and his accumulation of at least three strikes for having filed frivolous actions in the past.

A "conditional filing" means that Plaintiff must obtain authorization from the Court to proceed. All prisoner and pauper complaints must be screened by the Court to determine whether summary dismissal is appropriate. 28 U.S.C. §§ 1915(e)(2)(B) & 1915A(b). The Court must dismiss any claims that are frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant with immunity from such relief. *Id.*

Prior to screening of the Petition and analysis of Plaintiff's three-strikes status, the Court must address Plaintiff's request for recusal.

## PLAINTIFF'S REQUEST FOR RECUSAL

Plaintiff moves to disqualify the Court. Dkt. 3. Title 28 U.S.C.A. § 144 provides: "Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding." A judge subject to a recusal motion may decide the recusal issue—a referral to a different judge is unnecessary. *United States v. Azhocar*, 581 F.2d 735, 738 (9th Cir. 1978). Thus, this Court proceeds to analyze the grounds for bias in this case and in this Court's prior interactions with Plaintiff during various litigations.

Title 28 U.S.C. § 455 requires that a judge disqualify himself "in any proceeding in which his impartiality might reasonably be questioned." Plaintiff has filed a separate "criminal complaint" against this Court. The Clerk of Court filed Plaintiff's "criminal complaint" against this Court in Case No. 1:25-cv-00043-DCN ("Case 43"), *Sivak v. Winmill*. Case 43 was assigned to Judge David C. Nye. Dkt. 3 at 2.  Plaintiff argues that, as a result of his filing a criminal complaint against this Court, "[b]ias has been proven in 1:25-cv-00043-DCN." Dkt. 3 at 1. He attaches to his recusal motion in this case a copy of the "criminal complaint" from Case 43. Dkt. 3-1 at 1-15.

As for the content of Case 43, the Court first notes that it is not possible for a private person to file a "criminal complaint" against another individual. *See Aldabe v.*

*Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). If Plaintiff believes that crimes have occurred, he may contact the county, state, or federal prosecutor's office, but only a prosecutor has authority to decide whether to file and pursue criminal charges.

Looking deeper into Case 43's content, the Court notes that the criminal complaint asserts wrongful conduct in the Court's handling of Plaintiff's federal capital habeas corpus case, *Sivak v. Hardison*, 1:96-cv-00056-BLW ("Case 56"). This Court presided over and dismissed Plaintiff's federal Petition for Writ of Habeas Corpus in Case 56. The Ninth Circuit Court of Appeals reversed in part this Court's final Order on a due process claim regarding an inmate witness's false testimony that may have affected sentencing. As a result of the reversal on that ground, this Court entered an Order permanently enjoining the State from carrying out the death penalty, unless the State held a new sentencing hearing for Plaintiff. *See* Case 56, Dkts. 362, 365.[1] In the same appellate opinion, the Ninth Circuit rejected Plaintiff's claims that the sentencing judge, Idaho District Judge Robert Newhouse, was biased against him. *See* Dkt. 362 at 41–47. There were no claims that this Court was biased against Plaintiff in the Ninth Circuit's Order in that case.

Here, Plaintiff asserts that, because Case 56 was reversed in part on appeal, this Court has an inherent bias that, under Plaintiff's reasoning, would prevent this Court from hearing any other federal action filed by Plaintiff. In general, a litigant is not entitled to rely upon a court's decisions from another litigation to show bias.

---

[1] Plaintiff is now under a sentence of life without parole. *See* Dkt. 4-1 at 18–19.

Disqualification is not required where the litigant challenges the Court's impartiality based upon its rulings. Such alleged errors are "the basis for appeal, not recusal." *See Focus Media, Inc. v. Nat'l Broadcasting Co. (In re Focus Media, Inc.)*, 378 F.3d 916, 930 (9th Cir. 2004), *superseded by statute on other grounds by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005* (holding that disqualification is not required where the allegations of bias arise from the adjudication of claims by the court in the course of litigation).

An exception to this rule exists when a litigant shows the "court's substantive rulings were products of deep-seated favoritism or antagonism that made fair judgment impossible." *Id.* (citation and punctuation omitted). The Court sees nothing in the record of Case 56 or any other case of Plaintiff's over which the Court has presided that would raise a question of bias or prejudice under this exception. Plaintiff's cases have been decided upon the Court's best, impartial judgment given the facts and legal arguments in the record of his case. The Court has no bias against Plaintiff.

In the request for recusal, Plaintiff specifically raises a due process ground: that recusal is required "when, objectively speaking, the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable." *Rippo v. Baker*, 580 U.S. 285, 287 (2017) (per curiam) (internal quotation marks omitted). In *Rippo*, the sentencing judge was the target of a federal bribery probe, and the prosecuting attorneys in Rippo's capital sentencing hearing were from the office involved in the federal bribery investigation. Rippo moved for the judge's disqualification under the Due Process Clause of the Fourteenth Amendment, contending that a judge could not

impartially adjudicate a case in which one of the parties was criminally investigating him. But the trial judge declined to recuse himself.

The United States Supreme Court held that the standard of law to be applied in *Rippo* was not whether there is an actual bias, "but instead whether, as an objective matter, the average judge in his position is likely to be neutral, or whether there is an unconstitutional potential for bias." *Id*. at 287. The *Rippo* case was remanded for the state court to reconsider the recusal decision under the proper legal standard.

To support Plaintiff's claims that this Court is biased against him, Plaintiff attaches a portion of the deposition of Judge Newhouse—who presided over Plaintiff's capital sentencing hearing in state court—from Case 56, Plaintiff's federal habeas corpus proceedings that probed his state district court proceedings. *See* Dkt. 1-1 in this case. In deposition, Judge Newhouse explained:

> After I did the death sentence, as I said, I had nearly every judge in the state of Idaho – there's no law on it in Idaho. There was nothing done on it. I had to reconstruct everything and so I had – I know Judge Windmill [sic]. I sent my papers to him and I'm not sure I didn't send some to Judge Lodge, but whatever it was, I was kind of the residence person that had the first go at it and so I had all these things and so we visited about it. That's part of the –

At that point in deposition, the attorney asked, "What do you mean by you sent your papers to Judge Lodge or Judge Windmill [sic]?" Judge Newhouse then explained in the following colloquy:

> A. Findings of Fact and what to do. Nobody had done any of these. Nobody knew what to do.

Q.  So you sent them to Judge Lodge and Judge Windmill
    [sic] as they were other district judges?

A.  They had death sentences and they said, "How did you
    handle it, Newhouse?"

Q.  Okay.

A.  I'm pretty sure I sent them to Judge Windmill [sic]
    because he had death sentences, abut all they were was a
    method. We all look at how did we handle things and what
    did we do. This was part of our being a judge. It wasn't
    anything about why we did it or where we were going. It was
    how, the procedure of it.

Q.  So essentially, "Hey I have this form for findings, you
    know, regarding the imposition of the death penalty, you
    know, the final order that you set down with aggravators and
    mitigators and so forth"; is that what you're talking about?

A.  That's what I am talking about. There were more than
    that. There were death warrants and there were judgment of
    convictions and all this stuff. Nobody had ever done any of
    them. I don't remember ever offering any of them because I
    wasn't that proud of them, but people called me up and got
    them from me.

Q.  What – if I recall, Sivak and Creech were the first two
    capital cases; is that right?

A.  That is not actually correct. There was one in North Idaho
    that was ahead of mine, but of course that was out of our area.
    So as far as the public in Southern Idaho was [sic] concerned,
    I was the first one, yes.

Dkt. 1-1 at 55–56.

Plaintiff has not shown how state judges' past collaboration on uniform ways to

implement new procedures in state court capital cases demonstrates existence of bias in a

present civil rights case in federal court. Plaintiff asserts: "Newhouse trained Judge

Winmill on Lacey's case to do the death penalty." Case 43, Dkt. 3-1 at 10. That judges

INITIAL REVIEW ORDER BY SCREENING JUDGE - 6

collaborated on methods, procedures, and forms to be potentially used in death penalty cases in the Idaho state courts serves judicial efficiency, uniformity, and equal protection principles in state court. Importantly, Judge Newhouse clearly explained that the judges did not use the shared information to decide "why we did it or where we were going," but simply for "the procedure of it." *Id.*  Plaintiff has not stated facts to the contrary, and his allegations do not rise to the level of unconstitutional potential for bias as in *Rippo*.

If Plaintiff *had* a claim that this Court was biased in Plaintiff's federal habeas corpus action, Case 56, then Plaintiff was required to bring that before final judgment in that case. Plaintiff no longer has a death sentence; such a claim would now be moot. To the extent that this free-floating historical information is now relied upon by Plaintiff to show bias in current civil cases, it is not sufficient to show that this Court formed a bias against Plaintiff that would prevent him from presiding over any kind of case Plaintiff later brought in federal court. Nothing in the deposition testimony shows that this Court had a bias when it presided over Plaintiff's federal habeas matter or that it does so now.

Based on the foregoing evaluation, the Court concludes that there are no adequate grounds for bias or prejudice shown in any of Plaintiff's filings under any legal theory. For the foregoing reasons, the Court will deny Plaintiff's request for recusal.

## REVIEW OF IN FORMA PAUPERIS REQUEST
## AND ALLEGATIONS OF PETITION

Knowing he has more than three strikes, Plaintiff has filed a document referencing the exception to the three strikes rule entitled, "Request to Proceed Without Cost based

on Imminent Danger," which is equivalent to an application to proceed in forma pauperis that attempts to sidestep his three-strikes status. Dkt. 4.

To address the growing trend of frivolous civil rights actions filed by prison inmates, the Prison Litigation Reform Act of 1995 introduced a "three strikes" provision. *See* Pub. L. No. 104-134, 110 Stat. 1321 (1996). This provision precludes a prisoner from filing lawsuits or appeals in forma pauperis if he previously filed three other actions in federal court that were dismissed on the grounds of frivolousness, maliciousness, or failure to state a claim upon which relief can be granted. *See* 28 U.S.C. § 1915(g). The only exception is that a prisoner with three strikes may file an in forma pauperis action if he shows that he is in "imminent danger of serious physical injury." *Id*. If the prisoner is not in such danger, then he must pay the full amount of the fee at the time of filing.

Plaintiff's case history shows that, prior to the date he filed the Petition in this action, he brought at least three civil actions that were dismissed as frivolous, as malicious, or for failure to state a claim. *See, e.g.*, *Sivak v. Wilson*, 1:93-cv-00190-EJL, Dkt. 30 at 18 (D. Idaho Jan. 4, 1995) (failure to state a claim and frivolous) (*aff'd*, Dkt. 33); *Sivak v. Wilson*, 1:93-cv-00363-EJL, Dkt. 18 (D. Idaho May 25, 1994) (adopting R&R (Dkt. 13 at 5), which recommended dismissal for failure to "state a cause of action") (appeal dismissed, Dkt. 21); *Sivak v. Winmill*, 1:02-cv-00353-LMB (Dkt. 12 at 5) (D. Idaho Oct. 17, 2002) (failure to state a claim) (appeal dismissed, Dkt. 17); *Sivak v. Duggan*, No. 21-35356 (9th Cir. Jan. 21, 2022) (frivolous); *Sivak v. Winmill*, 1:23-cv-00014-AKB (Dkt. 22) (D. Idaho July 18, 2023); *Sivak v. Idaho*, 1:23-cv-00140-DCN (Dkt. 17) (D. Idaho June 29, 2023) (failure to state a claim); *Sivak v. State of Idaho*, 1:23-

cv-00145-DCN (Dkt. 15) (D. Idaho June 14, 2023) (failure to pay fee and, alternatively, failure to state a claim); *Sivak v. Idaho*, 1:23-cv-00148-DCN (Dkt. 14) (D. Idaho June 29, 2023) (failure to state a claim); *Sivak v. Idaho*, 1:23-cv-00154-DCN (Dkt. 16) (D. Idaho June 29, 2023) (failure to state a claim); *Sivak v. Docket Clerk*, 1:24-cv-00020-BLW, Dkt. 5 (D. Idaho Feb. 4, 2024) (frivolous and malicious); *Sivak v. Docket Clerk*, 1:24-cv-00021-DCN, Dkt. 5 (D. Idaho Feb. 1, 2024) (frivolous and malicious); *Sivak v. Clerk of Court*, 1:24-cv-00030-AKB, Dkt. 7 (D. Idaho Mar. 20, 2024) (frivolous and malicious); *Sivak v. Ramirez*, 1:24-cv-00076-DCN, Dkt. 6 (D. Idaho April 1, 2024); *Sivak v. Winmill*, 1:24-cv-00164-AKB, Dkt. 3 (D. Idaho April 30, 2024) (frivolous and malicious); *Sivak v. Docket Clerk*, 1:24-cv-00165-DCN, Dkt. 4 (D. Idaho May 2, 2024) (frivolous and malicious). As a result, Plaintiff has more than three strikes under 28 U.S.C. § 1915(g).

The Court now reviews the allegations of the Petition to determine whether Plaintiff has alleged that he is in imminent danger, which would require application of the § 1915(g) "serious physical injury" exception. Plaintiff asserts he has a "natural right" of self-defense and that "[t]he issue is that the government of Idaho has a prison guard act to punish Lacey for enforcing the law." Dkt. 1 at 4. Plaintiff asserts that prison officials permit inmate Levi Talmage to move "from unit to unit and pray[] [sic] on young males for homosexual raping[]." *Id*. No allegations show that these particular alleged actions are relevant to Plaintiff's narrow claims regarding his own interactions with Talmage.

Rather, Plaintiff specifically asserts that Talmage "decided to become a 'bully' and order [Plaintiff] not to shower in the morning." *Id*. at 5. When Plaintiff went to the shower anyway, Talmage stole his clothing and property. Plaintiff chased Talmage,

Talmage held the items behind his back, and Plaintiff used "self-defense" to obtain return of the items and pushed Talmage. *Id*. at 6. Plaintiff was issued a Disciplinary Offense Report (DOR) for "Violence 2" as a result of this incident. He was found guilty of the DOR and given 20 days' commissary restriction for punishment. *See* Dkt. 1-1 at 2–3. Warden Tyrell Davis reviewed the video footage of this incident and affirmed the findings and sanctions. *Id*. at 5.

Plaintiff does not assert that he is in imminent danger of bodily harm from inmate Talmage. If he is, Plaintiff can notify prison officials through the prison grievance system rather than take self-help measures. Plaintiff's actual claim is that prison officials should not have punished Plaintiff for pushing inmate Talmage, and so the claims here have little to do with Plaintiff's fear of bodily injury, but rather that Plaintiff does not think he should have been punished for potentially causing Talmage bodily harm.

Further, Plaintiff's punishment was minimal, and there is no liberty interest in not receiving light sanctions in the regular course of prison life. An inmate cannot maintain a civil rights lawsuit on these grounds. "The Due Process Clause standing alone confers no liberty interest in freedom from state action taken within the sentence imposed." *Sandin v. Conner*, 515 U.S. 472, 480 (1995) (citation and punctuation omitted). That is, the Due Process Clause does not create a liberty interest in remaining free from certain restrictions unless they impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id*. at 484. A prohibition from buying items at the commissary for 20 days is not an atypical and significant hardship.

Accordingly, Plaintiff's in forma pauperis application will be denied as moot, and his case will be dismissed for failure to state a claim upon which relief can be granted.

## ORDER

**IT IS ORDERED:**

1.  Plaintiff's "Notice to Disqualify Byron [sic] Lynn Winmill for Bias" (Dkt. 3) is DENIED.

2.  Plaintiff's Request to Proceed Without Cost (Dkt. 4) is DENIED.

3.  Plaintiff's case is dismissed with prejudice for failure to state a claim upon which relief can be granted. Further amendment would not be able to help Plaintiff state a claim regarding his punishment for the shower incident where Plaintiff perpetrated physical violence upon Talmage because Plaintiff believed he had the right of defense of personal property in prison.

DATED: July 8, 2025

B. Lynn Winmill
U.S. District Court Judge